IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A. ELIZABETH KRAFT, | : |
| Plaintiff, | : Civil Action No.: 5:21-CV-5430 |
| vs. | : |
| | : JURY TRIAL DEMAND |
| CITY OF READING and MAYOR EDDIE MORAN (in his individual capacity only) Defendants. | : |

## ORDER

**AND NOW**, this _____ day of _____, 2022, upon consideration of the Defendants' Motion to Compel Plaintiff to Submit to an Independent Medical Examination, and any response thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is **GRANTED** and Plaintiff is hereby Ordered to submit to an Independent Medical Examination by Defendants' expert.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A. ELIZABETH KRAFT, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 5:21-CV-5430 |
| | : | |
| vs. | : | |
| | : | **JURY TRIAL DEMAND** |
| CITY OF READING and MAYOR EDDIE MORAN (in his individual capacity only) | : | |
| Defendants. | : | |

**DEFENDANTS, CITY OF READING AND MAYOR EDDIE MORAN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PLAINTIFF TO SUBMIT TO AN INDEPENDENT MEDICAL EXAMINATION**

**I.    INTRODUCTION**

The instant litigation arises out of Plaintiff's employment with the City of Reading. Plaintiff's Amended Complaint asserts claims of discrimination, sexual harassment, and retaliation in violation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution, Title VII, and the Pennsylvania Whistleblower Law, allegedly stemming from Plaintiff's employment with and termination from Defendant City of Reading. *See* ECF. No. 12.

Here, Plaintiff is seeking substantial emotional distress damages in this case resulting from the alleged harassment and retaliation. In fact, during her deposition Plaintiff testified extensively concerning her alleged emotional distress and resulting mental health counseling and treatment. Specifically, Plaintiff testified that she was previously diagnosed with depression and anxiety. Plaintiff testified that she was prescribed medications to treat the depression/anxiety and that in November 2021 her medications were increased as a result of her unemployment and filing of the instant Complaint. (See Exhibit "A" at 36:4-22). Additionally, Plaintiff certified in her answers to interrogatories that she treated with multiple different medical providers for emotional distress

1

as a result of the allegations raised in this litigation. (See Exhibit "B" at number 10). We have obtained the records from these providers, which confirm that Plaintiff is continuing to treat for ongoing emotional distress damages.

Accordingly, Defendants have retained an expert, Dr. Ziv to evaluate Plaintiff's mental health condition and claim for severe emotional distress. As part of the evaluation, Dr. Ziv has requested that Plaintiff submit to an independent medical examination ("IME"). Dr. Ziv has provided an affidavit in this matter confirming the importance of an IME. (See Exhibit "C"). Specifically, Dr. Ziv states that "an IME is important because '[t]he psychiatrist's primary assessment tool is the direct face-to-face interview of the patient. Evaluations based solely on review of records and interviews of persons close to the patient are inherently limited by a lack of the patient's perspective. Furthermore, the clinical interview provides the psychiatrist with a sample of the patient's interpersonal behavior and emotional processes,' which is helpful in making an assessment and forming professional opinions. American Psychiatric Association, Practice Guideline for the Psychiatric Evaluation of Adults (2d ed.) at 25." (See Exhibit "C").

Defendants requested that Plaintiff submit to an IME with Dr. Ziv pursuant to Federal Rule of Civil Procedure 35(a). On June 2, 2022 Plaintiff's counsel confirmed that Plaintiff will not voluntarily submit to an IME. Therefore, Defendants now file the instant Motion to Compel Plaintiff to submit to an independent medical examination.

## II.     Legal Argument

### A.     Standard of Review

Pursuant to Fed. R. Civ. P. R. 35(a), the Court may order a party to undergo a mental examination when the party's mental condition is "in controversy" and the movant establishes "good cause" for the examination. The first part of this two-part inquiry, is to determine whether

the plaintiff's mental condition is "in controversy." A plaintiff can put her condition in controversy by claiming damages related to it or, alternatively, if the defendant raises it as part of a defense. See Prather v. Prudential Fox & Roach, Civil Action No. 07-1264, 2008 WL 11431050, at *2 (E.D. Pa. 2008)[1]; Womack v. Stevens Transp., Inc., 205 F.R.D. 445, 447 (E.D. Pa. 2001). "Courts have allowed mental examinations in sexual harassment cases where the plaintiff has alleged ongoing psychological maladies as a result of the alleged harassment." Prather, 2008 WL 11431050, at *2.

To provide further clarity, the Third Circuit held that a party's mental condition is in controversy "where, in addition to a claim of emotional distress, the case involves one or more of the following factors:

> (1) a cause of action for intentional or negligent infliction of emotional distress;
>
> (2) an allegation of a specific mental or psychiatric injury or disorder;
>
> (3) a claim of unusually severe emotional distress;
>
> (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or
>
> (5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a)."

Kuminka v. Atlantic County N.J., 551 F. App'x 27, 29 (3d Cir. 2014) (per curiam) (quoting Turner v. Imperial Stores, 161 F.R.D. 89, 95 (S.D. Cal. 1995)).

Once it is determined that a party's mental condition is "in controversy," the second part of the inquiry is to determine whether the movant has established "good cause" for the IME. When determining whether the movant has established good cause to compel a mental

---

[1] Attached hereto as Exhibit "D"

examination, the Court must weigh the relevance of the information sought, the need to "preserve the equal footing of the parties" with respect to their ability to evaluate one party's mental condition, and the availability of such information from other sources. Womack v. Stevens Transport, Inc., 205 F.R.D. 445, 446-47 (E.D. Pa. 2001) (quotation omitted). Consequently, a motion to compel an examination pursuant to Rule 35 "requires a fact intensive analysis." McLaughlin v. Atlantic City, Civ. A. No. 05-2263, 2007 WL 1108527, at *2 (D.N.J. Apr. 10, 2007)[2]. See also Schlagenhauf v. Holder, 379 U.S. 104 (1964)("Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.' "); Conforti v. St. Joseph's Healthcare Sys., Inc., Civ. A. No. 17-50, 2020 WL 365100, at *3 (D.N.J. Jan. 22, 2020)[3]. The decision whether to compel a party to undergo an IME rests within the sound discretion of the Court. McLaughlin, 2007 WL 1108527, at *2.

   Here, Plaintiff has placed her mental health in controversy by: (1) alleging ongoing mental health treatment with various medical providers; (2) claiming unusually severe emotional distress.  The Defendants have, in turn, demonstrated good cause for the IME, as Plaintiff's emotional distress damages are the primary source of her damages and she has indicated that she intends to offer the testimony of her treating physicians to support those alleged damages.  As such, in order to effectively evaluate and defend against this claim, the Defendants must be given the opportunity to conduct an IME.

---

[2] Attached hereto as Exhibit E
[3] Attached hereto as Exhibit F

> B. **Plaintiff Must Be Compelled to Submit to an Independent Medical Examination**
>
> 1. **Plaintiff's Mental Health is in Controversy**

Here, Plaintiff has placed her mental health in controversy by: (1) alleging ongoing mental health treatment of a specific psychiatric disorder with various medical providers; and (2) claiming unusually severe emotional distress. In a similar case, Gross-Quatrone v. Mizdol, No. CV1713111JXNLDW, 2022 WL 254544, at *2 (D.N.J. Jan. 27, 2022)[4], the Court found that Plaintiff put her mental condition in controversy by pleading a claim of unusually severe emotional distress. Specifically, the plaintiff characterized her alleged emotional distress as "severe" in the Complaint and stated in responses to discovery that she was seeking damages for emotional distress manifesting in a litany of injuries including "severe" nosebleeds, "extreme anxiety," and the degradation of her physical and mental condition. Id. at *3. Ultimately, the Court compelled Plaintiff to submit to an IME, despite her assertion that was merely seeking "garden variety emotional distress damages." The Court in Gross-Quatrone reasoned that because Plaintiff was seeking extensive emotional distress damages and menial economic damages and sought to introduce evidence from her treating physicians of her ongoing emotional distress mental health treatment, Plaintiff had, in fact, placed her mental health in-issue. Id. See also Bird v. Borough of Moosic, Civ. A. No 18-2289, 2020 WL 1904454, at *2-3 (M.D. Pa. Apr. 17, 2020)[5] (plaintiff put mental condition in controversy by testifying at deposition that she was diagnosed with PTSD and suffered "extreme anxiety" requiring therapy and hospital visits); Dibrito v. Harrisburg Area Cmty. Coll., Civ. A. No. 08-2308, 2010 WL 936236, at *1 n.4 (M.D. Pa. Mar. 12, 2010)[6] (plaintiff put mental

---

[4] Attached hereto as Exhibit G
[5] Attached hereto as Exhibit H
[6] Attached hereto as Exhibit I

condition in controversy by alleging that her emotional distress was ongoing and accompanied by physical manifestations that aggravated her Lyme disease).

Here, similar to the cases cited above, Plaintiff has placed her mental health in controversy by testifying that she was diagnosed with depression, anxiety and panic attacks. Plaintiff testified that she has been prescribed medication to treat the disorders. In fact, Plaintiff testified that during the relevant time period of her employment with the City of Reading she continued treating for her mental health conditions and her medication dosage was increased. (See Exhibit "A" at 32:7-37:15 and Exhibit "B" at number 10). Plaintiff testified that as a result of the alleged actions of Defendants, Plaintiff was unable to sleep and suffered panic attacks. (See Exhibit "A" at 238:1-12). Additionally, Plaintiff testified that the emotional distress was so severe that she has actually made the decision to leave the practice of law. (See Exhibit "A" at 239:18-240:4). Certainly, these allegations are more than "garden variety emotional distress." Consequently, under Kuminka v. Atlantic County N.J., 551 F. App'x 27, 29 (3d Cir. 2014), Plaintiff has placed her mental health in controversy.

### 2. Defendants' Have established Good Cause

Defendants have established good cause for the IME. First, Plaintiff's alleged emotional distress is the primary source of her damages and Plaintiff has indicated that she intends to offer the testimony of her treating physicians as well as her own testimony to support those alleged damages. Counsel agreed at oral argument that a jury would be free to rely on such fact witness testimony to award plaintiff compensatory damages for severe emotional distress. Second, Defendants must be given the opportunity to defend and challenge Plaintiff's claims through the use of an expert.

Fundamental fairness demands that defendants equally be allowed to inquire into the cause and extent of plaintiff's complex web of physical and mental symptoms with the assistance

of a qualified expert. See Ornelas v. Southern Tire Mart, LLC, 292 F.R.D. 388, 392 (S.D. Tex. 2013) ("Even where a plaintiff chooses to forgo the use of an expert, courts have found that a defendant should not be compelled to limit its case to mere cross examination, as expert testimony can be essential to afford a defendant adequate opportunity to challenge the plaintiff's claim."); Womack, 205 F.R.D. at 447 (finding good cause for psychiatric IME because defense would be limited to cross-examination absent ability to develop its own evidence as to causation, an "insufficient test of truth"). The District Court of New Jersey emphasized that a Court must not "hamstring the defense by limiting that inquiry to the review of plaintiff's medical records and depositions of her treating physicians." Gross-Quatrone v. Mizdol, No. CV1713111JXNLDW, 2022 WL 254544, at *4 (D.N.J. Jan. 27, 2022).

The Middle District Court of Pennsylvania decided a similar case, Bird v. Borough of Moosic, Civ. A. No 18-2289, 2020 WL 1904454, at *2-3 (M.D. Pa. Apr. 17, 2020), finding that the plaintiff put her mental condition in controversy by testifying at her deposition that she was diagnosed with PTSD and suffered "extreme anxiety" requiring therapy and hospital visits. The Court reasoned,

> "[i]t would be unfair to allow a plaintiff to plead a garden variety emotional distress claim, and then allow him or her to amplify that claim at trial with testimony regarding extreme anxiety and a formal diagnosis [of a mental disorder] without permitting the defense to conduct a mental health examination."

Bird, 2020 WL 1904454, at *3.

Similarly, here Plaintiff has placed her mental condition "in controversy" for the reasons expressed in more detail above. Additionally, Defendants have established "good cause" exists to submit Plaintiff for the IME. First, Plaintiff's alleged emotional distress is the primary source of her damages and Plaintiff has indicated that she intends to offer the testimony of her treating physicians as well as her own testimony to support those alleged damages. Second, Defendants

7

must be given the opportunity to defend and challenge Plaintiff's claims through the use of an expert.  See Bird, 2020 WL 1904454, at *3; Womack, 205 F.R.D. at 447; and Gross-Quatron, 2022 WL 254544, at *4.  As articulated by Defendants' expert, Dr. Ziv, "an IME is important because '[t]he psychiatrist's primary assessment tool is the direct face-to-face interview of the patient. Evaluations based solely on review of records and interviews of persons close to the patient are inherently limited by a lack of the patient's perspective. Furthermore, the clinical interview provides the psychiatrist with a sample of the patient's interpersonal behavior and emotional processes,' which is helpful in making an assessment and forming professional opinions. American Psychiatric Association, Practice Guideline for the Psychiatric Evaluation of Adults (2d ed.) at 25." (See Exhibit "C").  Should Defendants be precluded from conducting an IME of Plaintiff, Defendants would be severely prejudiced in the defense of this matter.

Therefore, Defendants respectfully request that this Court grant the instant Motion, compelling Plaintiff to submit to an IME with Dr. Ziv.

### III.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant the instant Motion, compelling Plaintiff to submit to an IME with Dr. Ziv.

MARSHALL DENNEHEY WARNER
 COLEMAN & GOGGIN

BY: _____
JOHN P. GONZALES, ESQUIRE
Attorney for Defendants
City of Reading and Mayor Eddie Moran

Date: August 5, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A. ELIZABETH KRAFT, | : |
| Plaintiff, | : |
| vs. | : Civil Action No.: 5:21-CV-5430 |
| CITY OF READING and MAYOR EDDIE MORAN (in his individual capacity only) Defendants. | : **JURY TRIAL DEMAND** |

**CERTIFICATE OF SERVICE**

I, John P. Gonzales, Esquire, do hereby certify that a true and correct copy of the foregoing Brief in Support of Motion to Compel Plaintiff to Submit to an Independent Medical Examination on behalf of Defendants, City of Reading and Mayor Eddie Moran was served upon all counsel of record by electronic filing on the date below.

                                                                **MARSHALL DENNEHEY WARNER**
                                                                 **COLEMAN & GOGGIN**

**BY:** _____
                                       **JOHN P. GONZALES, ESQUIRE**
                                       Attorney for Defendants
                                       City of Reading and Mayor Eddie Moran

Date: <u>August 5, 2022</u>